**USAchem, INC., Plaintiff-Appellant,**

**v.**

**Howard A. GOLDSTEIN and Howard A. Goldstein d/b/a Goldseal Associates, Defendant-Appellee.**

**No. 187, Dockets 74–1201, 74–1223.**

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1975.

Decided Feb. 14, 1975.

Douglas S. Gates, Rochester, N. Y. (Harris, Beach & Wilcox, Rochester, N. Y., Henry W. Williams, Jr., Rochester, N. Y., of counsel), for plaintiff-appellant.

Warren Rosenbaum, Rochester, N. Y. (Shapiro & Rosenbaum, Rochester, N. Y., on the brief), for defendant-appellee.

Before MEDINA, MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Unfortunately for the parties and the federal courts, Howard A. Goldstein and National Chemsearch Corp. of New York entered into a contract on April 19, 1963 whereby Goldstein became employed as a salesman of what the company somewhat elegantly describes as "chemical specialties" and what Goldstein more realistically refers to as "janitorial supplies." Chemsearch was thereafter totally acquired by USAchem (Chem), a nationwide distributor of soaps, detergents, disinfectants, insecticides and comparable building maintenance and sanitary supplies. The business is highly competitive, with Chem employing about 1,000 salesmen throughout the United States and controlling about 1% or less of the national market. The "Sales Representative's Agreement" entered into by Goldstein assigned as his territory three upstate New York counties (Steuben, Yates and Ontario), plus seven municipalities in a fourth county (Monroe). A fifth county (Genesee) was added by letter amendment on December 26, 1963. The company reserved the right to do business in the assigned territory under various trade-names and to employ other representatives therein. The agreement further provided that during his term of employment and for 18 months after its termination for any reason, Goldstein would not himself or with others sell comparable products in the area or solicit or divert the company's customers in the assigned territory. The contract further provided that

> the term of each such covenant so violated shall be automatically extended for a period of eighteen (18) months from the date on which Representative permanently ceases such violation or for a period of eighteen (18) months from the date of the entry by a court of competent jurisdiction of a final or-

der or judgment enforcing such covenant(s), whichever period is later.

The agreement was terminable by either party without notice. Goldstein was to be paid commissions in accordance with a Commission Schedule, and advances against commissions earned and to be earned would be made by the company in such amounts as the company determined. The agreement further provided that it "shall be construed under and governed by the laws of the State of Texas." Both Chem and its predecessor were Texas corporations. The agreement was signed in New York and the work was to be performed in New York.

Goldstein, after a short training period,[1] proceeded to vend janitorial supplies in upper New York State to the apparent satisfaction of Chem until Friday, August 25, 1972 when he advised the company that he was quitting. On or about August 1, 1972, he had filed a certificate of doing business under the name "Gold Seal Associates," which, on Tuesday, August 29, 1972, made its first three sales of comparable chemical supplies to former Chem customers in the assigned territory.

Not until December 11, 1972 did Chem take action against Goldstein by commencing a diversity suit in the United States District Court for the Western District of New York. In the first cause of action Chem alleged breach of the restrictive covenant causing irreparable damage to its business and good will, and unfair competition. In a second cause of action Chem sought to recover advances in excess of earned commissions. Chem also sought a preliminary injunction and a final injunction prohibiting the defendant from competing with Chem for an 18-month period from the date of a final order of the court, plus an accounting, compensatory damages including the advances with interest, pu-

---

1. Goldstein was sent to Cape Cod for a week to receive instruction from another of the company's salesmen. On his return, he received instruction for four days from Harold Kimmel, the sales manager. Goldstein then went into the field on his own. He received visits from Kimmel 30 days and 60 days later, and thereafter only intermittently. Chem repeatedly emphasizes in its brief that it gives 18 months of training to its employees before it considers them to be fully productive salesmen.

nitive damages in the sum of $25,000, and the costs of the suit.

The defendant's amended answer filed on February 15, 1973 pleaded particular and general denials as well as affirmative defenses, including the illegality of the restrictive agreement, breach by Chem of the contract, interference by Chem with Goldstein by operating competing businesses in the assigned area, and finally the invalidity of the contract because of unconscionability. The defendant also counterclaimed, alleging that Chem had converted funds owed to Goldstein by reason of his participation in profit-sharing and stock participation plans.[2]

On February 22, 1973, Chem moved the district court for a preliminary injunction restraining Goldstein from competing, soliciting orders or divulging confidential information. Goldstein made a cross-motion, by notice of motion dated March 5, 1973, to dismiss the complaint because of failure to establish the $10,-000 jurisdictional amount required by 28 U.S.C. § 1332(a). Both motions were argued on March 12, 1973 before the Hon. Harold P. Burke, United States District Judge, who denied both motions on July 31, 1973. In his findings Judge Burke stated that the plaintiff had failed to show the irreparable damage necessary for a preliminary injunction and concluded that damages and an injunction after trial would constitute adequate protection. The defendant's motion to dismiss was denied without any comment. Plaintiff did not bother to appeal and the case proceeded to trial on the merits before a jury on December 11 and 12, 1973.

After both sides had rested, Judge Burke made the following rulings as a matter of law from the bench:

1) Denied the renewed motion of the defendant to dismiss because of failure to establish the jurisdictional amount;

2) Dismissed the claim of plaintiff for punitive damages;

3) Granted the plaintiff's claim for a recovery of unearned advances. (Judgment for $3,336 with interest at 6% was entered on January 11, 1974);

4) Granted the plaintiff's motion to dismiss the defendant's counterclaim;

5) Charged the jury that as a matter of law the contract was valid and that the provisions relating to post-employment competition were valid both as to time and territorial restrictions and that Goldstein was violating them.

Judge Burke submitted two written questions to the jury to be answered in writing. The questions were as follows:

(1) Has the plaintiff sustained damages by loss of profits by reason of sales made by the defendant within his former contract assigned territory?

(2) If your answer to Question 1 is yes, how much in dollar damages has the plaintiff sustained by loss of profits by reason of sales made by the defendant within his former contract assigned territory, between the dates August 29, 1972, and November 27, 1973?

Plaintiff's counsel stated that he took no exceptions to the charge and had no requests for any additional charge.

The jury returned the written finding that Chem had suffered no damages. In his findings and judgment of January 10, 1974, Judge Burke stated: "Based upon that finding by the jury, I find that there is no reasonable probability that the plaintiff will sustain damages during a period of eighteen months following the entry of this judgment." He further found that there was "no reasonable probability that the defendant will in the future divulge to others or use for his own benefit any confidential information acquired during the course of his employment relating to sales, processes, or formulas." He therefore denied plaintiff's application for an injunction in all respects.

Chem appeals from the judgment below as well as the denial of its motion

---

**2.** Goldstein has abandoned his claim regarding the stock participation plan, so that we

shall be concerned only with his rights in the funds produced by the profit-sharing plan.

for preliminary injunctive relief, and Goldstein cross-appeals from the dismissal of the counterclaim, the denial of his motion to dismiss the complaint for want of the jurisdictional amount, and the granting of judgment against him for $3,336 in advances paid to him by Chem.

## I

■ The substantial and core issue presented to this court is the validity of the restrictive covenant in the sales representation agreement. A threshold question is whether the contract is governed by the law of New York or Texas. Chem is no stranger to the federal courts and the precise contract and the choice of law provision it contains have been before other tribunals.[3] We need not reach the question since we find no significant difference between the two jurisdictions in their approach to the question of employee restrictions. Reasonable limitations of time and space upon the right to compete are not the sole criteria to be examined. Thus, in *Grace v. Orkin Exterminating Co.*, 255 S.W.2d 279, 284 (Tex.Civ.App.1953), the court stated:

Covenants in favor of the former employer, restricting competition by a former employee after the employment has terminated, which lasted for a reasonable time and which operated over a reasonable area, have been specifically enforced by injunction *in cases where the goodwill of the employer's customers had attached to the employee during the latter's employment and the employee thus had acquired during his employment a special influence with the customer which gave him an advantage over the em-*

*ployer in competition for the customer's business.*

(Emphasis added).

The New York cases have taken an unsympathetic view of post-employment restrictions; we have recently explored this view in *Bradford v. New York Times Co.*, 501 F.2d 51 (2d Cir. 1974), a decision which escaped the notice of both parties to this appeal.

■ In *Purchasing Associates, Inc. v. Weitz*, 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 604, 196 N.E.2d 245, 248 (1963), the New York Court of Appeals stated that a covenant barring an employee from competing with his former employer is

not only subject to the overriding limitation of "reasonableness" but is enforced only to the extent necessary to prevent the employee's use or disclosure of his former employer's trade secrets, processes or formulae [citing cases] or his solicitation of, or disclosure of any information concerning, the other's customers. . . . If, however, the employee's services are deemed "special, unique or extraordinary", then, the covenant may be enforced by injunctive relief, if "reasonable," even though the employment did not involve the possession of trade secrets or confidential customer lists.

There is no doubt that Goldstein, the purveyor of janitorial supplies, was not performing any special, unique or extraordinary services. Compare *Bradford v. New York Times Co.*, *supra*, 501 F.2d at 58 n. 4. There is no showing either that he possessed any "trade secrets."[4] *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 328 N.Y.S.2d 423, 278 N.E.2d 636 (1972) dealt with a former employee who was

---

**3.** National Chemsearch Corp. v. Hanker, 309 F.Supp. 1278, 1280 (D.D.C.1970) (applying Texas law); Certified Laboratories v. Rubinson, 303 F.Supp. 1014, 1022 (E.D.Pa.1969) (applying Pennsylvania law); National Chemsearch Corp. v. Bogatin, 233 F.Supp. 802, 808, 809 n. 15 (E.D.Pa.1964), vacated on other grounds, 349 F.2d 363 (3d Cir. 1965) (finding Texas law to be controlling but stating that it made no difference since the contract there was valid under both Texas and Pennsylvania law).

**4.** The appellant Chem makes much out of the fact that it takes effort and expense on its part to train its salesmen. However, the fact that a former employee was trained by the employer is not a basis for granting an injunction enforcing a restrictive covenant. Clark Paper & Mfg. Co. v. Stenacher, 236 N.Y. 312, 140 N.E. 708 (1923); Kidde Sales & Service, Inc. v. Peairson, 493 S.W.2d 326, 330 (Tex.Civ.App.1973).

engaged in the same business as Goldstein except at a managerial level and who opened a competing business after he had been discharged. The restrictive covenant in that case only applied if the employee terminated the relationship. Hence, the question before the court was whether the so-called confidential customer lists entrusted to the employee constituted trade secrets which would be protected even in the absence of a restrictive covenant. Judge Breitel, writing for a unanimous court in a thorough review of the authorities, held that where the customers are readily ascertainable outside the employer's business, as prospective users or consumers of the employer's services or products, trade secret protection would not attach and no injunction against solicitation of former customers would issue. See Clark Paper & Mfg. Co. v. Stenacher, 236 N.Y. 312, 318, 140 N.E. 708, 710 (1923); Grace v. Orkin Exterminating Co., *supra*, 255 S.W.2d at 284. The evidence in the case at hand indicates clearly that there was no magic in determining the customers of Chem's products— they were all listed in classified telephone directories and were readily ascertainable. However, the court in *Leo Silfen* was careful to note that "*[i]n the absence of express agreement to that effect* between the parties, or a demonstration that a customer list has the several attributes of a trade secret, courts, without more, should not enjoin an ex-employee from engaging in fair and open competition with his former employer.*" 29 N.Y.2d at 395, 328 N.Y.S.2d at 430, 278 N.E.2d at 641 (emphasis supplied). See also Annot., 28 A.L.R.3d 7 (1969).

■ We conclude that under either Texas or New York law the covenant here was valid to the extent that it precluded Goldstein from soliciting former customers with whom he had done business in his assigned territory. However, insofar as the covenant would preclude him from otherwise competing, it was overly broad and therefore not enforceable. Both states permit the court to enforce the covenant to the extent that

it is valid. Karpinski v. Ingrasci, 28 N.Y.2d 45, 51, 320 N.Y.S.2d 1, 6, 268 N.E.2d 751, 754 (1971); Orkin Exterminating Co. v. Veal, 355 S.W.2d 831 (Tex. Civ.App.1962). There is no question on the record before us that Goldstein did solicit former customers immediately after his resignation from Chem. There is evidence that in the first fifteen months of his independent operations Goldstein obtained 81% of his business from former clients. At the same time, the record reveals that Chem had a replacement in the field by October, 1972, who, within a year, had managed to reach a level of sales almost equal to Goldstein's past records at Chem. This evidence undoubtedly influenced the decision of the jury that Chem had suffered no damages.

■ Having determined that the covenant was of some validity and that it was breached, we are compelled to conclude nonetheless that Chem is entitled to no relief. Strangely, Chem here complains of the denial of the preliminary injunction on July 31, 1973, even though it took no appeal at that time when it claimed to be suffering irreparable damage. Although Goldstein started a competing business late in August, 1972, Chem did not commence this action until December 11, 1972 and did not move for preliminary relief until February 22, 1973, some six months later. In a Texas case involving a six-month employee restriction, plaintiff delayed two months after competition commenced before seeking relief and, on appeal, the court noted that some eight months had by then elapsed since the initiation of the damaging competition. The court, in affirming the denial of preliminary relief below, noted the lack of diligence of the employer. SCM Corp. v. Triplett Co., 399 S.W.2d 583, 588 (Tex.Civ.App.1966).

■ We are now asked some 28 months after Goldstein began to compete to grant "preliminary" relief, a request which appears to us to be completely frivolous. The argument that we should now grant an 18-month injunction running from the time of judgment here, as provided in the agreement, is equally un-

tenable. As we have indicated, such an injunction could only be granted with respect to Goldstein's solicitation of former customers of Chem. That solicitation commenced more than two years ago; whatever special influence Goldstein was able to bring to bear on former clients has long since been exercised, Grace v. Orkin Exterminating Co., *supra*, 255 S.W.2d at 288. There was evidence that Chem through its new representative would attempt to and did woo back some old customers, and, on the record before us, there is no showing that Chem is now suffering any irreparable harm which would justify equitable relief at this stage of the proceedings. On the contrary, an injunction now would, in effect, constitute an act of retribution or vengeance that would simply penalize Goldstein for his duplicity, a result which hardly comports with the general policy of limiting employee restrictions which have no purpose but to deprive the employee of his livelihood without any reasonable possibility of protecting the employer,[5] who has in this instance failed to act with the promptness one would anticipate. *Cui bono?*

## II

We do not believe that the court below erred in dismissing defendant's counterclaim against Chem which was based upon its alleged conversion of Goldstein's interest in the employee's profit-sharing plan, which, after nine years' employment, vested him with 45% of his Individual Account (45% of $6,560). Section 12.3 of the plan provided for a forfeiture of all amounts remaining in his account if he competed directly or indirectly with his employer. There is no doubt that Goldstein did so-

licit customers in violation of the covenant and that, under such an agreement, the forfeiture constitutes a valid liquidated damages clause which is enforceable. Bradford v. New York Times Co., *supra*, 501 F.2d at 57. The liquidated damages clause having been enforced, it would also follow that plaintiff's claim for final injunctive relief must fail. Diamond Match Co. v. Roeber, 106 N.Y. 473, 13 N.E. 419 (1887).

Chem now seeks to set aside the judgment below denying damages although it took no exception to the charge below and made no requests to charge. On appeal Chem still urges that its damages are incalculable and that it is therefore solely seeking injunctive relief, which we have held to be inappropriate.

## III

On his cross-appeal Goldstein claims that the court below committed error in its unexplained determination that Chem was entitled to a judgment of some $3,336 plus interest representing the excess of advances over earned commissions during June, July and August, 1972. There is authority both in New York and Texas that, in the absence of an agreement, express or implied, to repay unearned advances, an employer cannot recover them from his employee.[6] However, none of the cases cited reflects the facts developed on this trial. While we find no express agreement to repay advances, the contract did require Goldstein to "devote his entire time and attention exclusively to the business and interests of the Company." It appears in the testimony below that Goldstein became ill in the spring of 1972, although the nature of his illness was not

---

5. Purchasing Associates, Inc. v. Weitz, *supra*, 13 N.Y.2d at 272, 246 N.Y.S.2d at 604, 196 N.E.2d at 248; Kidde Sales & Service, Inc. v. Peairson, 493 S.W.2d 326, 329–30 (Tex.Civ. App.1973).

6. Northwestern Mut. Life Ins. Co. v. Mooney, 108 N.Y. 118, 15 N.E. 303 (1888); Nationwide Mut. Ins. Co. v. Timon, 9 A.D.2d 1018, 194 N.Y.S.2d 429 (4th Dep't 1959) (*per curiam*);

Kleinfeld v. Roburn Agencies, Inc., 270 App. Div. 509, 60 N.Y.S.2d 485 (1st Dep't 1946); Carter v. Bradlee, 245 App.Div. 49, 280 N.Y.S. 368 (1st Dep't 1935), aff'd, 269 N.Y. 664, 200 N.E. 48 (1936); Pease Piano Co. v. Taylor, 197 App.Div. 468, 189 N.Y.S. 425 (1st Dep't), aff'd, 232 N.Y. 504, 134 N.E. 548 (1921); Denton v. Berset, 212 S.W.2d 196 (Tex.Civ.App. 1948); Reynolds v. Wood, 65 S.W.2d 1114 (Tex.Civ.App.1933); Annot., 32 A.L.R.3d 802 (1970).

established. It further appears that, in July, as Goldstein testified, he was contacting several other suppliers of competing materials with a view to making another arrangement. On or about August 1st, he had filed a certificate to do business and, within four days after giving notice to his former employer, he was able to conclude several orders with former customers. We think it is a fair inference that during the spring and summer of 1972, Goldstein was accepting advances from Chem, not in the expectation of deducting them from commissions he would earn in selling for Chem's account, but rather for his own purposes. We conclude that, when a contract requires a salesman to devote his full time to the business of his employer, it can be fairly implied that he would repay unearned advances during any period when he was not simply idle but was in fact mounting a campaign against his employer. Cf. Harry R. Defler Corp. v. Kleeman, 19 A.D.2d 396, 243 N.Y.S.2d 930 (4th Dep't 1963), aff'd on the opinion below, 19 N.Y.2d 694, 278 N.Y.S.2d 883, 225 N.E.2d 569 (1967); Johnson v. Quayle & Son Corp., 236 App.Div. 351, 257 N.Y.S. 874 (1st Dep't 1932); Schwed v. E. N. Kennedy, Inc., 220 App.Div. 189, 221 N.Y.S. 179 (1st Dep't 1927); Kupfer v. Holtzmann, 88 N.Y.S. 362 (App.T. 1904); Pictorial Films, Inc. v. Salzburg, 106 N.Y.S.2d 626 (Sup.Ct.1951). A contrary holding would encourage a breach of the trust and confidence of the employer. See Leo Silfen, Inc. v. Cream, *supra*, 29 N.Y.2d at 391–92, 328 N.Y.S.2d at 427, 278 N.E.2d at 639.

■ Defendant's further argument that the complaint should be dismissed because the plaintiff failed to establish the $10,000 jurisdictional minimum for diversity actions is not persuasive. At the time the motion to dismiss was made, the court below had, in view of the sales volumes involved, every expectation that damages could exceed the jurisdictional amount; the fact that the jury, having the benefit of the evidence indicating the mitigation effected by Goldstein's replacement, returned a verdict for defendant is irrelevant. The determination of the court must be considered in light of the facts known at the time the pretrial motion was made and not retroactively. 1 J. Moore, Federal Practice ¶ 0.91 [3], at 831, ¶ 0.92 [1], at 835 (2d ed. 1974).

Although we have limited the validity of the restrictive covenant and to that extent disagree with the court below, we conclude that the district judge was correct in denying the appellant injunctive relief, granting the appellant recovery of the advances, denying the appellee's motion to dismiss and dismissing the appellee's counterclaim. Accordingly, we affirm the judgment below.

Affirmed. No costs.