**IBUR & ASSOCIATES ADJUSTMENT COMPANY, INC.,**
**Plaintiff-Respondent-Appellant,**

v.

**John WALSH,**
**Defendant-Appellant-Respondent.**

**Nos. 41057, 41155.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 15, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 15, 1980.

Richard B. Dempsey, David L. Baylard, Shifrin, Treiman, Barken, Dempsey & Ulrich, St. Louis, for plaintiff-respondent-appellant.

Gerard F. Hempstead, Ira L. Blank, Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, St. Louis, Joseph Schmidt, St. Louis, for defendant-appellant-respondent.

CRIST, Judge.

Appeal from a decree enjoining defendant from engaging in the business of public adjuster within a radius of 150 miles from the City of St. Louis for a period of 3.5 years after December 17, 1976. We reverse and remand.

Defendant (hereinafter "employee") contends the trial court erred in enforcing the restrictive covenant of his employment contract because: (1) plaintiff (hereinafter "employer") had no trade secrets and employee had obtained no influence over employer's customers; (2) employee's job tasks were not unique, individual, and peculiar; (3) the trial court erroneously modified the contractual area limitation from a 600 mile radius to a 150 mile radius; and (4) no business justification exists for a 3.5 year and/or 600 mile limitation.

■ The pivotal issue is whether employer had acquired a proprietary right in its stock of customers and their good will. Customer contact is a legitimate protectable interest. *Deck and Decker Personnel Consultants, Ltd. v. Pigg*, 555 S.W.2d 705, 707 (Mo.App.1977). We are to reverse and remand only under the mandate of *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). We must consider the facts in the light most favorable to the judgment of the court below. With the admonition of *Murphy* in focus, we fail to find sufficient evidence of a protectable interest.

Employer was in the business of adjusting fire losses and other casualty losses and representing insureds in the preparation and presentation of claims against insurance companies. Employee was first employed by employer in April of 1970. At that time, employee had no experience in the particular field of loss adjustment. He executed an employment contract which contained a non-competition clause similar to the one at issue. Employee quit working for employer on July 6, 1971.

Employee returned to work with employer on January 7, 1974. He executed the employment contract relative to the controversy at hand which contained the following provision: "Employee will not for a period of three and one half (3½) years from such termination date, directly or indirectly engage in any business, either for himself or for others, similar to or in competition with the business of Employer, in the City of St. Louis, Missouri[,] or within a radius of 600 miles thereof. . . ."

Before executing this employment contract, employee had discussed with Mr. Leslie Ibur, president of Ibur and Associates (employer), the provisions of the non-competition clause. Employee terminated his employment effective December 17, 1976.

Employee worked as a public adjuster solicitor. As a public adjuster solicitor, employee was actually in the business of selling employer as a public adjuster to various insureds who had sustained casualty losses, primarily from fire. Employee had to have knowledge of the potential client's business in order to outline exactly what employer could do for the client if hired to adjust the client's loss.

Employer had trained employee in the various methods of soliciting insureds. Employer also taught employee various phases of different businesses so employee would have a working knowledge of the intricacies of industrial insurance policies. Employee was not sent to any type of training school to learn about the job of being a public adjuster solicitor. Employer did require employee to pass a state examination for adjusters, which employee did.

Employer had a list of numerous contacts who provided leads for employer's business. This information was contained on index cards which were kept in employer's office. Employee had access to such index cards during the time of his employment. Essentially, the index cards were a file of previous casualty losses. Information on the cards might presently help employee gain a competitive edge if the losses were incurred at a particular address or if the damaged property were owned by a firm that employer previously represented. Generally, these firms were realty, law, accounting, and construction firms. Mr. Ibur admitted their existence and location are listed in the

generally available public directories. To obtain the majority of their leads, employees used fire radios. When they heard of a fire occurring somewhere in the metropolitan area, they would get to it as soon as possible.

Employee contacted people who had losses and attempted to persuade them to sign a contract with employer. Once employee was able to get an insured to sign a contract with employer, employee turned the entire matter over to an adjuster who handled the loss completely. Employee was not supposed to, and did not, adjust the losses himself. Employee would tell prospects what services employer would perform, but the adjuster would handle the claims with the insurance company, not employee.

Employee terminated his job with employer and took a job as a public adjuster solicitor with one Joseph Caulfield, a public adjuster in direct competition with employer. Employer does not have any idea of any damage he may have sustained as a result of employee leaving his employment.

■ Employer has a legally protectable interest if its employee learned any trade secrets or acquired any influence over its customers. *Renwood Food Products v. Schaefer*, 223 S.W.2d 144 (Mo.App.1949). The parties have essentially admitted that the employment did not involve trade secrets. *See Metal Lubricants Co. v. Engineered Lubricants Co.*, 411 F.2d 426 (8th Cir. 1969); *Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1 (1973). The determinative issue is whether employer had a legitimate protectable interest in its stock of customers.

Employer cites *Deck and Decker Personnel Consultants, Ltd. v. Pigg*, 555 S.W.2d 705 (Mo.App.1977) and *House of Tools & Engineering, Inc. v. Price*, 504 S.W.2d 157 (Mo.App.1973) as authority for the proposition that employer had a legitimate protectable interest in its stock of customers. In *Pigg*, a case involving an employment agency, there was ample evidence that contacts with prospective employers to whom job applicants were referred by the agency were a vital and intricate part of the agen-

cy's success. The agency's employee in that case acquired a close and valuable rapport with such prospective employers. In *Price*, a case involving a tool sales firm, the employee began calling upon the same customers he had served while selling for his employer. There was no such evidence in our case.

■ Employee merely solicited people who suffered losses. There was no evidence that employee took any business from his former employer. Employee had almost no contact with the customers prior to their incurring a loss. There was little repeat business. Employee's job was limited to signing up clients in need of employer's services. He was not an adjuster and did not render the actual adjusting services. Employee did not service employer's clients in any way. Once employee had obtained an insured's contract for employer's services, employee would have no further contact with the client. We hold that employer did not have a legally protected interest in and to its stock of customers under these circumstances.

Having found employer has no protectable interest in the employment of employee, we do not deem it necessary to consider the other points raised in this appeal.

This case is reversed and remanded with instructions for the trial court to enter judgment in favor of employee-defendant and against employer-plaintiff with costs to be taxed against employer-plaintiff.

DOWD, P. J., and REINHARD, J., concur.