**CONTINENTAL RESEARCH CORPORATION,**
Plaintiff-Appellant,

v.

**Allen G. SCHOLZ et al.,**
Defendants-Respondents.

No. 41484.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 13, 1980.

Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, Richard J. Sheehan, Pat L. Simons, Clayton, for plaintiff-appellant.

Paskal, Sweney & Kelley, Robert M. Paskal, St. Louis, Byron Cohen, Clayton, for defendants-respondents.

GUNN, Presiding Judge.

Plaintiff-appellant-employer Continental Research Corporation has appealed from its unsuccessful injunction and damages action to enforce a non-compete covenant against defendant-respondent-employee Allen G. Scholz. The trial court limited the application of the non-compete restrictive covenant of the employment contract to the territory which had been assigned to the employee. The time frame for application of the restrictive covenant was restricted to an 18-month period subsequent to the termination of employment, which, in this case, had passed prior to the trial court's decision. Asserting that the trial court's decision was at best only a pyrrhic victory for it, the employer has appealed alleging

that the decision was not supported by substantial evidence and that it totally eviscerated the purport of the covenant by failing to give effect to its terms. We affirm.

In December, 1971, the employee executed an employment contract to work as a salesman for the employer, who was in the business of selling and distributing chemical supplies generally associated with industrial maintenance. Pursuant to the contract, the employee was assigned certain counties in central and southwestern Missouri as his sales territory. The agreement provided that for a period of eighteen months following any termination of his employment, the employee would not compete with the employer in the following geographical areas: (a) within his assigned territory, (b) within seventy (70) miles of the corporate headquarters in Clayton, Missouri, and (c) within a seventy (70) mile radius of his assigned territory. The contract also contained the following provision, purporting to automatically extend the duration of the covenants under certain contingencies:

> In the event of violation by Representative of any one or more of the covenants contained in this paragraph, it is agreed that the term of each such covenant so violated shall be automatically extended for a period of eighteen (18) months from the date on which Representative permanently ceases such violation or for a period of eighteen (18) months from the date of the entry by a court of competent jurisdiction of a final order or judgment enforcing such covenant(s), whichever period is later.

After approximately five years of what apparently was a mutually beneficial arrangement, the employee became dissatisfied due to certain developments in his relationship with the employer and determined to venture into business for himself. On March 24, 1977 he submitted, and the employer accepted, his resignation. He immediately began soliciting the sale of competitive products for himself both within and without his former assigned territory, doing business and incorporating as Dynamic Research Corporation.

Early in April, 1977, the employer filed suit seeking recovery of certain sums alleged to have been advanced to the employee. Counterclaim was filed for commissions claimed due and unpaid. On the last day of June, 1977, more than three months after the employee embarked on his course of competition, the employer amended its petition to include counts seeking to enjoin the employee from competing as specified in the employment contract and to recover damages allegedly occasioned by the employee's breach of its terms. The original count and counterclaim were severed for separate trial. Although the amended petition also requested preliminary injunctive relief, there is no indication that this request was ever called for hearing or that such relief was otherwise ever pursued or granted.

After hearing on the issues before it, the trial court refused to enforce the restrictive covenants other than within the employee's assigned territory or for more than the initial 18 month period following termination of employment. As the 18 month period had passed, enforcement of the non-compete time limitation has provided the employer no benefit or protection.

The substance of the relevant evidence is as follows. The employer does business and assigns salesmen to every area covered by the proscriptions in the employee's contract. When the employee left his employment, it appeared that he utilized many of the employer's sales materials and techniques to further his own interests. These materials included "technical data sheet" listing specifications and applications of the products sold by the parties; business forms such as invoices adapted by the employer to suit its needs; "daily analysis sheets" helpful in evaluating and improving sales performance; promotional novelty materials; and lists of general categories of possible customers together with the respective product requirements of each category. The employee also had been given a customer list containing the names of between 100 and 300 customers located within his assigned territory, of which only 50 names were ac-

tive customers at the time it was given to him. The employee testified that he developed the territory until it contained approximately 500 customers of the employer's products.

After he had become a productive salesman, on occasion the employee accompanied other less experienced salesmen on sales trips outside his assigned territory for training purposes. The record reflects that after terminating his association, the employee had conducted business with two of the employer's customers within his former assigned territory and with one customer outside the area covered by the contract. The evidence was inconsequential that he had successfully consummated any post-employment sales with the employer's customers located within the 70 mile radius areas. It was the employee's testimony that 95–100% of his business activity was outside his former . assigned territory. The trial court found that the only customers of the employer solicited by the employee following his termination were located within his assigned territory during employment with the exception of the one customer located entirely outside any of the areas covered in the contract. It further found that none of the materials employee appropriated from employer constituted trade secrets and that whatever exposure the employee had had to customers of the employer located outside his assigned territory did not constitute "customer contacts". The court concluded that the employer had no protectable interest *vis-a-vis* the employee in any area outside the assigned territory or for any period of time beyond 18 months from his employment termination. Accordingly, it ordered injunctive enforcement of the non-compete covenant only as to the assigned territory and for 18 months from termination, although that period had already expired at the time the decree was entered.

Initially, the employer complains that the trial court impermissibly rewrote the employment agreement by limiting the effect of the competition strictures to 18 months from the employment termination date rather than 18 months from the date of judgment or the date the competition violation ceased. As a result of the trial court's order—so argues the employer—the specific intendment of the parties, as expressed in the non-competition provisions, was vitiated.

The employer misconceives the implication of the trial court's action in this regard. The issue is not whether the trial court had the power or authority to "rewrite" the agreement of the parties but whether the court had the power to fully enforce the agreement as written.

▇▇▇▇ The ordinary rules of contractual construction and enforcement are not necessarily applicable to non-compete agreements. And the evolution of the law relating to such contracts has been substantial since the indignant exclamation of the hackle-raised court in *Dyer's Case*, Y.B. Mich. 2 Hen. 5, f.5, pl. 26 (C.P. 1414), the earliest reported case involving such restrictive agreements: [1] "Per Dieu si le plaintiff fuit icy il irra al prison, tanque il ust fait fyne au Roye." [2] Today, the courts are somewhat more moderate in their approach to such provisions and will enforce certain restrictive covenants under appropriate circumstances. *See, e. g., National Starch and Chemical Corp. v. Newman*, 577 S.W.2d 99 (Mo.App.1978); *USAchem, Inc. v. Lewis*, 557 S.W.2d 15 (Mo.App.1977); *Long v. Huffman*, 557 S.W.2d 911 (Mo.App.1977); *Deck and Decker Per. Consultants, Ltd. v. Pigg*, 555 S.W.2d 705 (Mo.App.1977); *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74 (Mo.App.1976); *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238 (Mo.App.1976); *House of Tools and Engineering, Inc. v. Price*, 504 S.W.2d 157 (Mo. App.1973). *See also*: *Schnucks Twenty-Five, Inc. v. Bettendorf*, 595 S.W.2d 279 (Mo.App.E.D.1979). But the fundamental rule regarding restrictive covenants remains as stated in *Prentice v. Williams*,

---

**I.** 73 Harv.L.R. 625, 636 (1959–60).

**2.** "By God, if the plaintiff [seeking to impose a non-compete restriction] were here he would go to prison until he paid a fine to the King."

324 S.W.2d 466, 470 (Mo.App.1959), that "[a] restrictive covenant limiting an individual in the exercise or pursuit of his occupation is in restraint of trade [cites omitted], and the burden of establishing its validity, by showing that it is reasonable, rests upon the party claiming its benefit." *Accord: Prentice v. Rowe*, 324 S.W.2d 457 (Mo.App.1959). It is therefore beyond cavil that to the extent a non-compete agreement is not demonstrably reasonable, a court may not decree enforcement of its terms. Refusing to give effect to unreasonable terms does not constitute an impermissible "re-writing" of such an agreement. The purpose of the restrictive covenant is to protect an employer from unfair competition by a former employee without imposing unreasonable restraint on the latter. *National Starch and Chemical Corp. v. Newman*, 577 S.W.2d at 104. *See also: Ibur and Associates Adjustment Company, Inc. v. Walsh*, 595 S.W.2d 33 (Mo.App. E.D.1980). Protection of the employer, not punishment of the employee, is the essence of the law.

▮ With the foregoing precepts in mind, we consider the employer's argument that the trial court's order was erroneous in that it had no prospective effect, i. e., the 18 month period spanned by the injunction dating from the employee's termination had expired at the time the judgment was entered. It may be true that the trial court enjoined activity which was not logically enjoinable as it had already taken place and the effect of the order was therefore superfluous. But that does not automatically lead to the conclusion that it was error to have failed to grant some other relief[3] or to have made the 18 month non-compete restriction apply from the date of the trial court's order. Rather, the issue is the appropriateness and reasonableness of imposing additional injunctive relief to extend

from the time of the court's order under the circumstances of the case. Guided by the indited principles regarding the purpose of imposing non-competition restrictions, we believe the trial court's refusal to enforce the 70 mile radius and the 18 month limitations from the date of the order was supported by the evidence.

▮ The standard formula for determining the reasonableness of such restrictions is to inquire whether they are "no greater than fairly required for protection" of the party seeking enforcement. *Prentice v. Rowe*, 324 S.W.2d at 461. Additionally, in Missouri an employer may only "fairly require" the protection of certain narrowly defined and well recognized interests against possible appropriation by a former employee. These protectable interests are limited to trade secrets and customer contacts, the latter being essentially the influence an employee acquires over his employer's customers through personal contact. *Ibur & Associates Adjustment Co. v. Walsh; Renwood Food Products v. Schaefer*, 240 Mo.App. 939, 223 S.W.2d 144 (1949).

Addressing first the reasonableness of the geographical limitations desired by the employer, we find no evidence that the employee attempted to exploit any knowledge of trade secrets following termination.

While difficult to reduce to a precise and infallible formula, our courts have found the following to be a workable definition of the term "trade secret":

[A]ny formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of

---

**3.** We note that employer's pleadings included a prayer for damages as well as injunctive relief, and that the judgment below did not address the issue of damages. On an appropriate evidentiary showing, of course, the court could have awarded damages in lieu of the ineffectual injunction. However, examination of the rec-

ord reveals that employer apparently abandoned its damage prayer through failure to introduce any evidence in support thereof after experiencing some initial difficulty in securing such evidence. Employer raises no question on appeal regarding the damage issue.

customers. It differs from other secret information in a business . . . in that it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid . . . .

The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. . . . Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 18–19 (Mo. banc 1966), *citing* Restatement, Torts, § 575.

■ The sales aids and materials entrusted by the employer with the employee do not appear to be unique to employer in this widespread and highly competitive industry. Product specifications and applications are readily obtainable from the manufacturers. Generalized lists of possible customers are easily duplicated by resort to classified telephone directories. The sales techniques taught employee and the performance evaluation devices, as well as the label, invoice and order forms from which he borrowed heavily in establishing his own business, appear to be such as would be utilized in any industry with a retail sales force in the field. Minor adaptations of common business forms and techniques to the employer's own particular needs do not raise such to the level of "trade secrets".

■ The only remaining theory under which the trial court could have enforced the non-competition agreement in any area outside the employee's assigned territory would be if he had established during and by virtue of his tenure with employer, "customer contacts" in those areas. *Renwood Food*. The rationale for such a rule is that in the sales industry the goodwill of a customer frequently attaches to the employer's sales representative personally; the employer's product becomes associated in the customer's mind with that representative. The sales employee is thus frequently in a position to exert a special influence over the customer and entice that customer's business away from the employer. An employer may properly protect itself against such an eventuality for a reasonable period of time. *Renwood Food*, 223 S.W.2d at 151–2; *Prentice v. Rowe*, 324 S.W.2d at 462. Because it is this special influence that justifies enforcement of non-compete covenants, the quality, frequency and duration of employee's exposure to the customers is of crucial importance in determining the reasonableness of the restriction.

■ In the present case, the employer argues that the employee may have been exposed to and was aware of the existence of customers in the proscribed 70 mile radius areas by virtue of certain infrequent trips into those areas while assisting in training other sales personnel or through discussions with personnel servicing those areas during informal Saturday morning sales meetings at the employer's headquarters. Applying the customary standard of review as set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and assuming that employee was aware of the names of some customers in those areas (a fact denied by the employee), we cannot find that the trial court erred in concluding that no "customer contacts" existed outside employee's sales territory. Mere knowledge that a customer exists cannot be considered the sort of "contact" that would give rise to any influence by the employee over such customer. There was no evidence that the employee possessed the degree of influence over any customer located in the 70 mile radius areas necessary to justify enforce-

ment of the covenant under the "customer contact" theory in those areas.

The cases approving extensions of non-compete agreements outside assigned sales territories are distinguishable. In *Renwood Food*, for example, the court found that many of the employee's assigned area customers were actually grocery chains, and influence over a buyer located in the assigned territory who was in a supervisory position with such a chain could have the effect of extending the employee's influence to cover chain members that lay outside that territory. *Id.* at 152. There was no such showing in the record before us. The trial court correctly concluded that neither of the recognized "protectible interests" of the employer existed in any area located outside employee's assigned territory.

The only remaining issue for consideration is whether the non-compete covenant should have been automatically extended within the assigned territory for 18 months from the date of the injunction.

A survey of the authorities reveals that such automatic time extension provisions are almost uniformly disapproved. The employer discloses but one reported case wherein such an extension was specifically upheld, *Arrow Chemical Corp. v. Pugh*, 490 S.W.2d 628 (Tex.Civ.App.1972), a case in which the employee presented no evidence at trial and filed no brief on appeal.[4] The holding of the *Arrow Chemical* case as to the time extension was itself explicitly disavowed in a subsequent Texas case, *Cardinal Personnel, Inc. v. Schneider*, 544 S.W.2d 845 (Tex.Civ.App.1976). In finding such automatic time extensions *per se* unreasonable, the *Cardinal Personnel* court reasoned as follows at p. 847:

> . . . the covenant constructs a time frame ascertainable only by hindsight; i. e., the duration of the covenant cannot be determined until the jurisdiction of the

trial court is invoked and its equity powers exercised. Hence, paragraph 6(B) [the automatic 6 month extension provision] prohibits a former employee from engaging in any employment agency business for an indefinite and indeterminable period. If an injunction were issued against Schneider today enjoining her from engaging in the employment agency business for six months from the date of that injunction, the injunction would not expire until more than a year from the date she terminated her employment. Such a result is inconsistent with the clear language of paragraph 6(A) [limiting the non-compete covenant to a period of 6 months from termination] and would not be anticipated by the ordinary employee entering into such an agreement. Such a result is neither definite nor reasonable. This court holds that a covenant not to compete for a period of time which will not commence until an injunction is issued is unenforceable and void as contrary to public policy.

While such reasoning is persuasive, we need not rule on whether such automatic time extension provisions are *per se* unreasonable in Missouri. We hold that this provision is unreasonable *under the circumstances presented in this case*, which is dispositive of this issue.

We note that the record before us discloses relatively insignificant competition by the employee in his former assigned territory. By his testimony, the employee does, at most, 5% of his business in that area. The employer introduced evidence as to only two customers in the area that had been successfully solicited by the employee and made no specific showing whatever of any consequent damage suffered by it. A more crucial factor in our determination, however, is the failure of the employer to secure timely temporary injunctive relief.[5]

---

**4.** The *Arrow Chemical* court specifically noted in its opinion that it had not been advised in any manner of any legal theory to support a denial of an injunctive relief enforcing the automatic time extension provision.

**5.** Although the employer amended its petition almost three months after termination to request that a preliminary injunction issue, the record discloses no attempt by it to call this request for hearing or otherwise secure preliminary relief. We note that present counsel did

The reasoning of *USAchem, Inc. v. Goldstein*, 512 F.2d 163 (2nd Cir. 1975), is compelling. *Goldstein* involves the same industry and an automatic extension provision identical in pertinent particulars to the present case. Although the employee in *Goldstein* admittedly conducted 81% of his competing business with former clients, the court found a dearth of evidence suggesting any threat of present irreparable harm, in that employee had long since exerted whatever special influence he possessed. The employer had already minimized its damages by sending new salesmen to the area who were able to woo back many customers to the employer's fold. Also, the court emphasized that the employer was six months tardy in requesting—and had never obtained—preliminary injunctive relief during the 28 months that had elapsed since termination of employment. In refusing to effectuate the automatic extension, the Second Circuit observed, 512 F.2d at 169:

> [T]here is no showing that Chem is now suffering any irreparable harm which would justify equitable relief at this stage of the proceedings. On the contrary, an injunction now would in effect, constitute an act of retribution or vengeance that would simply penalize Goldstein for his duplicity, a result which hardly comports with the general policy of limiting employee restrictions which have no purpose but to deprive the employee of his livelihood without any reasonable possibility of protecting the employer, who has in this instance failed to act with the promptness one would anticipate.

Similarly, we conclude that no legitimate purpose of the employer would not be served by the imposition of injunctive relief extending the non-competition covenant. Such an imposition now would only constitute punishment to the employee without meaningful protection for the employer—an improper juxtaposition of purpose for the covenant.

Employer argues that *USAchem, Inc. v. Lewis*, requires a different result, in that a similar automatic extension was specifically approved by our Western District counterpart. Employer misreads *Lewis*. After holding that the 18 month restriction *dating from employee's termination* and the territory restrictions of a similar non-compete agreement were reasonable and not inimical to public policy, the court suggested that, on remand, the trial court "consider whether further injunctive relief is appropriate" pursuant to an automatic extension provision also contained in the agreement before the court, citing *Arrow Chemical*.[6] The trial court having refused to enforce the original 18-month-from-termination restriction by injunction, the question of the validity of the subsequent automatic 18 month extension could not have been reached by it and it was therefore not before the appellate court. *Lewis* does not hold that the automatic extension provision was in fact reasonable and applicable under the circumstances there presented, but only that the trial court might consider whether such was the case on remand. It should also be noted that, unlike the employees in *Goldstein* and this case, the *Lewis* employee had been enjoined since initiating his competition so that an extension of the covenant would not necessarily have had the effect of belatedly depriving him of an existing livelihood without the possibility of protecting a countervailing legitimate interest of the employer. *Lewis* is not felicitous to the situation in this case.

Judgment affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.

---

not represent the employer at that stage of the proceedings.

**6.** We note that the chronology of the *Arrow Chemical, Cardinal Personnel* and *Lewis* cases

is such that *Lewis* would have been drafted before *Cardinal Personnel* appeared in the Reporter overruling *Arrow Chemical*.