**ORCHARD CONTAINER CORPORATION, Plaintiff-Respondent,**

v.

**Edgar L. ORCHARD and Consolidated Industries, Inc., Defendants-Appellants.**

**No. 41412.**

Missouri Court of Appeals, Eastern District, Division Two.

April 29, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 20, 1980.

Mastorakos & Dunne, Paul A. Hennerich, III, Chesterfield, for defendants-appellants.

Whaley & McAuliffe, Donald H. Whaley and Robert H. Koester, Clayton, for plaintiff-respondent.

GUNN, Presiding Judge.

A covenant not to compete is the subject of this appeal.

Prior to 1977 defendant-appellant Edgar Orchard (defendant Orchard) had been president of the plaintiff-respondent Orchard Container Corporation (plaintiff Corporation), a manufacturer and seller of corrugated cardboard containers. In 1971, Bennett Paper Corporation[1] purchased all of the corporate stock of the plaintiff Corporation from defendant Orchard. Among the terms of the acquisition agreement and transaction was defendant Orchard's retention as president of the plaintiff Corporation, and an employment agreement was drafted to effectuate this purpose. Defendant Orchard executed the contract in two capacities—signing for the plaintiff Corporation as its president and for himself as the employee. The only other signature to the agreement was by the plaintiff Corporation's secretary attesting to the execution. The portion of the contract material to this case provides:

> *Covenant Not to Compete*—Orchard agrees that he will refrain, directly or indirectly, within three (3) years after his services with the Company are terminated, whether such termination occurs during the period of the contract, at the end of the term of the contract, or any time thereafter in the event Orchard continues working with the Company, from the creation, production, management of production or sale of the items hereinabove described within an area of Two Hundred (200) miles distant from any office or plant operated by the Company now or in existence at the time of termination. The parties hereto realize that the non-compete clause herein given is to be fully essential in the development of the Company's business during its formative years and is a material and essential portion of this contract.

Except for the above recited covenant not to compete provision, the employment contract was to expire at the end of 1973. While defendant Orchard contended that an officer of Bennett Paper Corporation had waived the strictures of the non-compete covenant as a condition of his continued employment, the officer specifically denied discussing or waiving them.

Over the years there was a substantial deterioration in the relationship between

---

1. Bennett Paper Corporation was engaged in the same business activities as the Orchard Container Corporation.

defendant Orchard and Samuel Bennett, owner of Bennett Paper Corporation. Early in September, 1977, Mr. Bennett removed the entire board of directors of plaintiff Corporation, amended its by-laws to reduce the number of directors from five to one and appointed himself as its sole director. On September 23, 1977, Mr. Bennett effected defendant Orchard's discharge by the plaintiff Corporation.

Immediately after his discharge, defendant Orchard's wife and sister-in-law formed Orchard Consolidated Industries (Consolidated), and he became affiliated with it in the capacity of "consultant". Consolidated operated in direct competition with plaintiff Corporation. Mrs. Orchard ceased daily activity with Consolidated shortly after its organization and defendant Orchard actively participated in its operations and held himself out to be its president. The record is inconclusive as to precisely when plaintiff Corporation became aware of defendant Orchard's competition pursuant to his new affiliation, but on July 27, 1978, it filed this action for preliminary and permanent injunctive relief enforcing the non-compete covenant and for damages.[2] A preliminary injunction was granted September 20, 1978, but the trial court's order excepted certain of defendant Orchard's customers from its restrictions.

At trial, plaintiff Corporation adduced evidence as to certain of its former customers whose business had been appropriated by defendant Orchard, either by himself or through Consolidated, together with dollar amounts for lost profits attributable to his competition. The bulk of plaintiff Corporation's business activities were centered in the St. Louis Metropolitan area, generally in Illinois and Missouri within a 50 mile radius of St. Louis. But plaintiff also had important customers in Illinois and Missouri 125 miles beyond St. Louis and extending even into Oklahoma, 400 miles distant. After finding, *inter alia*, that the parties had entered into a valid and binding covenant not to compete, and that the agreement was enforceable both as to time and scope, that

defendant Orchard had breached and engaged in conspiracy with defendant Consolidated to compete with plaintiff Corporation, causing it actual damages in the amount of $61,273, the court entered the following judgment:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the Defendants Edgar L. Orchard and Orchard Consolidated Industries, Inc., are hereby permanently enjoined for a period commencing on the date of this Judgment, Order and Decree, and ending September 23, 1980, from soliciting away from Plaintiff any of Plaintiff's customers known to Defendants to be such and who were on September 23, 1977, with intent to divert, take away or attempt to divert, take away or solicit any of the customers of the Plaintiff within an area of 200 miles from St. Louis, Missouri.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that judgment be entered for Plaintiff and against Defendants, Edgar L. Orchard and Orchard Consolidated Industries, Inc., under Count I and Count II of Plaintiff's petition, jointly and severally in the amount of $61,273.00 for actual damages, and $7,500.00 for punitive damages.

Within the thirty day period following the entry of the original judgment, the trial court entered the following order amending its judgment:

### ORDER NUNC PRO TUNC

By order of the Court, Judgment entered January 29, 1979 corrected "Nunc Pro Tunc" as of said date as follows:

It is hereby ordered, adjudged, and decreed that the Defendant, EDGAR L. ORCHARD, is hereby permanently enjoined for a period commencing on the date of this Judgment, Order and Decree, and ending September 23, 1980, from directly or indirectly engaging in the creation, production, management or production, or sale of corrugated paper products or other related products within an area

---

2. Orchard Consolidated Industries (Consolidated) was also named a party defendant.

two hundred (200) miles distant from St. Louis, Missouri.

It is further ordered, adjudged, and decreed that Defendant, ORCHARD CONSOLIDATED INDUSTRIES, is hereby permanently enjoined for a period commencing on the date of this Judgment, Order and Decree and ending September 23, 1980, from soliciting away from Plaintiff any of Plaintiff's customers known to Defendant's Officers and Directors to be such and who were such on September 23, 1977, with the intent to divert, take away or attempt to divert, take away or solicit any of the customers of Plaintiff within an area of two hundred (200) miles from St. Louis, Missouri.

On appeal, defendants argue five points of alleged error: (1) the entire employment contract was invalid from its inception for want of any authority on defendant Orchard's part to bind the plaintiff Corporation to an employment contract; (2) that the 200 mile restriction on competition is unreasonable and, hence, invalid, and that the use of the time restriction language "formative years" in the covenant is fatally vague; (3) that the trial court erred in failing to find that defendant Orchard had been released from the restrictive covenant pursuant to an oral agreement; (4) that plaintiff abandoned the restrictive covenant due to laches in seeking its enforcement; (5) that if the damage award of the original judgment is not found to have been deleted by the later judgment (the nunc pro tunc order), that award of damages is erroneous as it is unsupported by evidence.

■ Defendant Orchard views the fact of his signing the employment contract on behalf of himself and as president of the plaintiff Corporation as failing to breathe life into the contract; that the contract was void for want of corporate authorization or board of directors approval. It is generally true that a corporate officer should not represent his corporation in transactions in which he has a personal interest out of danger of taking advantage of his position. But here defendant Orchard, as president, possessed authority to bind the plaintiff Corporation under the circumstances. *Fair Mercantile Co. v. Union-May-Stern Co.,* 359 Mo. 385, 221 S.W.2d 751 (1949). Furthermore, as defendant Orchard reaped the benefits of the employment contract, he may not challenge or deny its validity. *Long v. Huffman,* 557 S.W.2d 911 (Mo.App.1977); *Labor Discount Center, Inc. v. State Bank & Trust Co. of Wellston,* 526 S.W.2d 407 (Mo.App.1975). *Accord: William R. Bush Const. Co. v. Bambrick-Bates Const. Co.,* 176 Mo.App. 608, 159 S.W. 738 (1913).

Defendant Orchard's second point relates to the unreasonableness of 200 mile limit and vagueness of the duration of the restriction by use of "formative years". The objection as to the area designation has some merit; the vagueness objection has none.

■ Because non-compete agreements are considered to be in restraint of trade, they are presumptively void and enforceable only to the extent that they are demonstrably reasonable. *Continental Research Corp. v. Scholz,* 595 S.W.2d 396 (Mo. App.1980); *Accord: National Starch and Chemical Corp. v. Newman,* 577 S.W.2d 99 (Mo.App.1978); *Reed, Roberts Associates, Inc. v. Bailenson,* 537 S.W.2d 238 (Mo.App. 1976). Further, an employer may only seek to protect "certain narrowly defined and well recognized interests" against appropriation by former employees by means of such a restriction, *viz.:* trade secrets and stock of customers. *Continental Research Corp. v. Scholz; Ibur and Associates Adjustment Co., Inc. v. Walsh,* 595 S.W.2d 33, (Mo.App.1980).

■ Neither party has raised the issue of trade secrets, and consideration is limited to the issue of customer contacts. The question of the reasonableness of the geographical limits sought to be imposed depends upon whether the employer possessed a stock of customers located co-extensively with those geographical limits. Under the indited principles, the employer obviously cannot reasonably extend the limitations of the non-compete agreement to areas in which he has no protectable interests.

Here, the record contains testimony that the employer, in addition to the business conducted in the St. Louis Metropolitan area, had solicited customers located in Illinois and Missouri, 50, 90 and 125 miles distant from St. Louis. In light of testimony placing customers of the plaintiff Corporation within the aforementioned area, we believe that the non-compete provisions should be modified to apply to a 125 mile radius from St. Louis in the states of Missouri and Illinois. Otherwise, the trial court's conclusion that the agreement was reasonable cannot be said to be without evidence in support of it nor against the weight of the evidence. *Cave v. Cave*, 593 S.W.2d 592 (Mo.App.1979).

■ Defendant's complaint as to the use of the words "formative years" is also without merit. By its express terms, the non-compete agreement is limited to three years duration from the date of termination. The subsequent use of the words "formative years," while less luculent, is admonitory only. The usage appears in a clause without apparent binding effect, the purpose of which appears to be to supply the rationale or justification for the inclusion of the non-compete covenant in the contract. It does not by its terms nor implicitly purport to vary the express limitation of three years, and it creates no ambiguity as to an essential or material term. Its inclusion does not render the covenant unenforceable.

■ Defendants' argument that the restrictive covenant was waived by an officer of Bennett Paper Corp. in a conversation with defendant Orchard is unavailing. Aside from the omission of any showing that the officer of the Bennett Paper Corporation was empowered to waive rights and obligations owing to the plaintiff Corporation, there was a conflict in testimony as to whether such purported waiver took place. This is wholly a factual issue, the resolution of which is committed to the trier of fact—in this case, the trial court. The trial court had the opportunity to evaluate the credibility of the respective witnesses, a process involving the weighing of many intangibles not evident to us from a lifeless record. In this case the question was resolved against defendants, and we decline the invitation to second guess the trial court. *Cave v. Cave*.

■ Defendant also asserts the laches of the plaintiff in seeking relief by court enforcement of the covenant as a bar to that relief. While, under certain circumstances, such cunctation will warrant the ultimate denial of relief, *see: Continental Research Corp. v. Scholz* and authorities there collected, such is not the case here. The record shows the plaintiff sought *and obtained* preliminary injunctive relief in July, 1978 (*compare: e. g., USAchem, Inc. v. Goldstein*, 512 F.2d 163 (2nd Cir. 1975), where preliminary relief was never obtained). Defendant Orchard apparently embarked on his course of competition beginning in October of 1977. The record is somewhat equivocal as to precisely when plaintiff Corporation became aware of the role defendant Orchard was playing in the loss of business that it thereafter suffered. The record, however, is clear that he indulged in some subterfuge in attempting to conceal his participation in the competition generated by Consolidated. We note that he was not identified as an officer of Consolidated in any of the corporate filings on behalf of that corporation and that he characterized himself as a "consultant" in his testimony, although there was evidence that he held himself out to third parties as Consolidated's president. The record also suggests that Mrs. Orchard served as little more than a straw party in the organization and incorporation of Consolidated. In any event, the application of laches is not triggered by the passage of any fixed period of time. Rather, it depends on the particular circumstances of each case. *Metropolitan St. Louis Sewer Dist. v. Zykan*, 495 S.W.2d 643 (Mo. 1973). Under these circumstances the trial court was properly within its discretion in refusing to invoke the doctrine.

Next, defendant Orchard asks us to find that by the subsequent "nunc pro tunc" order amending the initial judgment, the trial court in effect deleted its prior award of actual and punitive damages, or alterna-

tively, that the damage award is unsupported by competent evidence and improperly based on other than loss of true net profit.

We note initially that the trial court's subsequent order amended only the injunctive portions of the prior order and did not purport to delete the prior award of damages. Insofar as defendant Orchard relies on the court's use of the term "nunc pro tunc" in support of its position, it is misled by a mistake in terminology.

The functional boundaries of nunc pro tunc orders are firmly established in this state. They lie to correct clerical omissions, mistakes or misprisions so as to make the record speak the truth by evidencing an act done or a judgment actually rendered at a prior time but not carried into or faithfully recorded in the record; they do not lie to correct judicial errors, mistakes or oversights, or to create a new record or to enter a judgment never made or one different from that actually rendered, albeit the judgment rendered was not the judgment the judge intended to make.

*Warren v. Drake*, 570 S.W.2d 803, 806 (Mo. App.1978). Furthermore, before any correction can be made by nunc pro tunc order, the record must clearly show the facts authorizing the entry. *Id.* The record fails to disclose any such authorizational basis.

The amended judgment was entered within the thirty day period during which the trial court possessed absolute control over it for a multitude of purposes. Rule 75.01. Further, the trial court did not alter its findings of fact—including the amount of damages. In the absence of any indication that the trial court intended to alter its prior damage award, we conclude that the prior judgment stands, amended only by the proviso as to the injunctive terms.

Defendants next attack the sufficiency of the evidence in support of the $61,273 damage award. We are convinced that the award is supported by the evidence. Defendant Orchard seems to contend that the damage figures are mere extrapolations of the profits of the plaintiff corporation from sales to customers subsequently lost to Consolidated current at the time Orchard's services were terminated. In other words, the assumption is made—so says defendant Orchard—that but for his defalcation in enticing away business, income from lost customers would have continued at existing levels. Defendants assail this as too speculative on which to base a damage award.

It is true, as defendants argue, that as a general rule "the recovery of anticipated profits of a commercial business is . . . too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery." *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo.1968). However, an exception to this rule exists where anticipated profits are "made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount; . . ." and where "proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period," is shown. *Id.* at 714.

Plaintiff Corporation's evidence of net loss was derived from its books and records for a period of approximately three years preceding defendant Orchard's discharge and included the exact income realized from each of the customers in question over the prior period of time. It also included both the expenses attendant upon effecting the sales specifically to those customers and those that were attributable to the general operation of the business. The data in question was also collated, presented and interpreted by a competent witness and was largely uncontested. The only questionable item involved gross sales of $40,000 to a customer once served by plaintiff Corporation and no longer sold after defendant Orchard's formation of Consolidated. No proof was offered that Consolidated did in fact now sell that customer. However, the amount involved attributable to "net profits" would be insignificant with

inconsequential effect on the total judgment. We therefore hold, as did the court in *Mills v. Murray*, 472 S.W.2d 6, 16 (Mo. App.1971), upon a similar showing, that "[t]his proof furnished a basis for the rational estimate of the loss of anticipated profits resulting from defendant's activity."

Finally, defendant objects to the characterization of the lost profits as "net," inasmuch as the amount of income taxes that would have been due on such profit as income was not subtracted from the damage award. There is no merit to this argument. It is the province of the Internal Revenue Service and local taxing authorities to deduct taxes from the recovery by a plaintiff of what presumably would have been ordinary income to it but for the defendant's activities. If defendant Orchard were to prevail upon this point, plaintiff Corporation would essentially incur a double deduction of taxes—once by the court in the process of calculating the damages to be awarded, and once by the taxing authorities upon the recovery of the lost income. Additionally, the proper amount of tax liability will ultimately depend on many factors not before the trial court. For example, evidence was presented here that when the tax for the period in question was calculated on a "consolidated basis", no taxes would have accrued. It is not the function of the court or the parties to become collectors of taxes.

The judgment, as amended by the order of February 2, is affirmed as modified regarding the territorial restrictions.

STEPHAN and PUDLOWSKI, JJ., concur.