**Michael W. COLLEGE and Nancy J. College, Plaintiffs-Appellants and Cross-Appellees,**

**v.**

**J. Mark SCANLAN, Futura Properties, Limited, a Colorado corporation, Poole & Company Realtors, a Colorado corporation, June Steely, Megapolitan Mortgage Company, a Colorado corporation, Lakewood Megapolitan Mortgage Company, a Colorado corporation, and Michael A. Stafford, Defendants-Appellees and Cross-Appellants.**

**No. 83CA0063.**

Colorado Court of Appeals,
Div. II.

Jan. 10, 1985.

Dailey, Goodwin & O'Leary, P.C., Daniel T. Goodwin, Aurora, for plaintiffs-appellants and cross-appellees.

Don A. McCullough, Denver, for J. Mark Scanlan and Futura Properties, Ltd.

Aldo G. Notarianni, Denver, for Poole & Co. Realtors.

Louis A. Morrone, Denver, for June Steely.

Grant, McHendrie, Haines & Crouse, P.C., Phyllis Cox, Denver, for Megapolitan Mortg. Co., Lakewood Megapolitan Mortg. Co., and Michael A. Stafford.

KELLY, Judge.

Plaintiffs, Michael and Nancy College, appeal from the trial court judgment concerning a real estate transaction involving defendants, J. Mark Scanlan, Futura Properties, Ltd., Poole & Co. Realtors, June Steely, Lakewood Megapolitan Mortgage Co., Megapolitan Mortgage Co., and Michael Stafford. We affirm in part and reverse in part.

Plaintiffs presented five claims for relief to the trial court. The first claim sought relief from Futura on a promissory note. The second claim requested that Futura's corporate veil be pierced. The third claim alleged a conspiracy among Steely, Scanlan, Michael Stafford, Lakewood Megapolitan, and Megapolitan, to defraud the Colleges. The fourth claim alleged that defendant Megapolitan's refinance charges were too high. The final claim alleged that Scanlan made an oral promise to pay College for the property.

After dismissing the second and third claims for relief, the trial court entered judgment on the first claim against Futura for $438,818, on the fourth claim against Megapolitan for $1,053.24, and on the fifth claim against Scanlan for $50,000. The Colleges appeal. Among other grounds for reversal, plaintiffs assert that the trial court erred in denying them the opportunity to present testimony concerning similar transactions by defendants. Scanlan cross-appeals, alleging that there is insufficient evidence in the record to support the $50,000 judgment against him. We disagree with plaintiffs but agree with Scanlan.

The Colleges owned a 30-unit apartment building which they decided to sell by advertising in the newspaper. Defendant Steely, a real estate licensee working for Poole & Co., responded to the advertisement and advised Michael College that she had an interested purchaser, Scanlan, another real estate agent, who was looking for apartment buildings to convert to condominium units. Steely then notified Scanlan of the availability of the property.

A few days later, Michael College met with Scanlan and Steely at the property to discuss the possible purchase of the property. After much negotiation, a receipt and option contract for the sale of the property between Scanlan and the Colleges was executed on May 11, 1979. The purchase price was $859,570.

The Colleges agreed to refinance the building to permit partial releases for an interim loan and to remove the underlying encumbrance on the property of approximately $361,347. After the Colleges had approached several lending institutions without success, Scanlan suggested that they contact Lakewood Megapolitan, a firm with which Scanlan had conducted business in the past. The Colleges met with Michael Stafford of Megapolitan, and a financing agreement was closed on July 12, 1979.

In September of 1979, the May 11 contract between the Colleges and Scanlan was renegotiated. Scanlan and the Colleges entered into a contract for a new purchase price of $806,000. This contract was closed on November 21, 1979.

A few weeks earlier, Scanlan had formed the corporation, Futura Properties, Ltd., in order to purchase the property. The Colleges knew that Futura would hold the title to the property and that Futura was the maker of the promissory note. Futura had borrowed money from Megapolitan for the purchase of the apartment building; thus, Megapolitan held a note and first deed of trust on the property. Futura gave to College a second deed of trust and a promissory note for $337,200 which was to be paid in full on or before July 20, 1980.

Futura defaulted on its loan to Megapolitan following its February 1980 payment. The holder of the note and deed of trust, the assignee of Megapolitan, began foreclosure proceedings in June 1980. The Colleges were unable to redeem the property.

## I.

The trial court refused to allow testimony of the plaintiffs' witness concerning an allegedly similar transaction between the witness and the defendants. Plaintiffs assert that the witness' testimony should have been admissible under CRE 404(b) which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ While CRE 404(b) is more frequently applied in criminal prosecutions, it also applies in civil cases if the evidence is relevant to the issues. *Garcia v. Aetna Casualty & Surety Co.,* 657 F.2d 652 (5th Cir. 1981); *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.1979). Here, the trial court did not err by refusing to admit the testimony. To be admissible, similar transaction evidence (1) must be offered for a valid purpose, (2) must be relevant to a material issue, and (3) must have a probative value that outweighs any prejudice resulting from its admission. *People v. Casper,* 631 P.2d 1134 (Colo.App. 1981).

■ Plaintiffs made an offer of proof to the court that the witness would have testified that Scanlan or Futura purchased apartment buildings from him in November 1979 in order to convert the buildings into condominiums. The witness would also have testified that Scanlan arranged financing for these real estate arrangements through Stafford at Megapolitan, that Scanlan and Futura defaulted on the mortgages to Megapolitan, and that the proper-

ties were later sold to a partnership owned by officers and directors of Megapolitan. Finally, the witness would have testified that he lost approximately 2.5 million dollars in equities in the property.

There is nothing in the offer of proof to indicate that the testimony would have tended to prove fraud by the showing of any connection between Scanlan, Stafford and Futura in the transaction to which the testimony related. Thus, it would not have been probative of the alleged fraud in the College transaction and was properly excluded.

Plaintiffs' other allegations of error are without merit.

## II.

■ In his cross-appeal, Scanlan contends that there is insufficient evidence in the record to support the trial court's determination that the Colleges were damaged in the sum of $50,000. We agree.

The trial court's judgment is based on defendant's oral agreement with the plaintiffs to convert the apartments into condominiums. The trial court ruled:

"Assessment of damages against Scanlan for the breach of the contract is a difficult thing to prove and to evaluate. If the deal had gone through, the parties could have made some $100,000 a piece, but there was a bad market, high prices, and some other factors that entered into it which may lend itself to diminishing the damages. The court finds that the plaintiffs have been damaged in the amount of $50,000 and enters judgment in favor of the plaintiffs and against Scanlan for $50,000 and costs."

We are unable to find any support in the record for the trial court's calculation of damages.

The $50,000 judgment against Scanlan is reversed, and the judgment is affirmed in all other respects.

SMITH and STERNBERG, JJ., concur.