**WESTERN–REALCO LIMITED PARTNERSHIP 1983–A, a Wyoming limited partnership, Cortez–Realco Limited Partnership, a Wyoming limited partnership, and Realco, a Wyoming general partnership, and a general partner of Western–Realco Limited Partnership 1983–A and Cortez–Realco Limited Partnership, Plaintiffs–Appellees,**

v.

**Cleveland C. HARRISON, Defendant and Third–Party Plaintiff–Appellant,**

v.

**Larry HARSH, Third–Party Defendant–Appellee.**

**No. 87CA0813.**

Colorado Court of Appeals, Div. V.

Aug. 17, 1989.

Rehearing Denied Oct. 26, 1989.

Certiorari Denied May 14, 1990.

Hall & Evans, Daniel R. Satriana, Jr. and John E. Bolmer, II, Denver, for plaintiffs-appellees.

Constantine Anderson & Tobey, P.C., Jeffrey A. Knoll, Englewood, for defendant and third-party plaintiff-appellant.

Radetsky & Shapiro, P.C., Jay Stuart Radetsky and James M. Edwards, Denver, for third-party defendant-appellee.

Opinion by Judge PLANK.

In this dispute concerning an investment in two limited partnerships, defendant and third-party plaintiff, Cleveland C. Harrison (buyer), appeals the judgment entered upon a jury verdict, finding in favor of plaintiff, Western–Realco Limited Partnership (seller). Buyer also appeals the trial court's judgments dismissing his third-party claims against Larry Harsh (accountant), and dismissing his counterclaims based on fraud and violations of federal and state security

regulations. We affirm in part, reverse in part, and remand.

Accountant had been providing tax planning advice to the buyer for ten years. As part of that tax planning advice, the accountant made recommendations regarding tax sheltered investments to the buyer. Accountant recommended to the buyer only those investments that had some direct relationship to the seller or its affiliates.

Acting on accountant's advice, the buyer invested in two limited partnerships in December of 1983. Each subscription document included a purchaser questionnaire, a partnership agreement, a subscription agreement, and a promissory note setting forth the buyer's payment schedule over the next several years. However, the buyer did not sign any of the subscription documents for either limited partnership.

In June of 1984, the buyer, through his attorneys, demanded rescission, but seller refused. The seller subsequently brought this action for breach of an express oral contract. The buyer denied any breach asserting, *inter alia,* the affirmative defense of fraud in the inducement and counterclaimed against the seller alleging violations of federal and state security regulations by its failure to disclose material facts and failing to register the securities. The buyer also brought a third-party claim against the accountant for fraudulent representations.

Prior to the submission of the case to the jury, the trial court directed a verdict against the buyer on all counterclaims and third-party claims. The trial court also refused to instruct the jury on the buyer's affirmative defense of fraud in the inducement. However, the trial court fashioned a rescission remedy allowing the jurors to find that if they determined that no contract existed between the seller and buyer, then the buyer would be entitled to a return of the initial down payments which he paid into the limited partnerships.

The jury returned a verdict for seller, and this appeal followed.

I.

Initially, the buyer contends that the trial court erred in directing verdicts against him on his claims that the seller had violated § 5(a) of the Securities Act of 1933 (the Act), 15 U.S.C. § 77e (1981) (§ 5 Registration Requirement), and also § 12(1) of the Act, 15 U.S.C. § 77*l* (1) (1981) (Strict Liability Provision). We agree.

■ The Securities Act of 1933 and the subsequent Securities and Exchange Act of 1934 constitute a comprehensive plan to protect investors by requiring the filing of a registration statement containing material facts bearing upon the investment merit of securities which are publicly offered or sold through the use of the mails or through the instrumentalities of interstate commerce. *Securities & Exchange v. Continental Tobacco Co.,* 463 F.2d 137 (5th Cir.1972). To accomplish this end, registration and disclosure requirements are imposed on those with access to relevant information. *Wasson v. Securities and Exchange Commission,* 558 F.2d 879 (8th Cir. 1977).

The registration requirements are the heart of the 1933 Act, and § 12(1) imposes strict liability for violating those requirements. *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063 100 L.Ed.2d 658 (1988). A person who violates § 12(1):

"... shall be liable to the person purchasing such security from him, ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security. H.R. 5480, 73d Cong., 1 Sess. (1933)."

■ Liability under § 12(1) is a particularly important enforcement tool, because in many instances a private suit is the only effective means of detecting and deterring a seller's wrongful failure to register securities before offering them for sale. *Pinter v. Dahl, supra.*

■ Generally, the § 5 Registration Requirement forbids the use of any means of interstate commerce or of the mails to sell

or offer to sell securities without having first filed a registration statement with the Securities and Exchange Commission. *See United States v. Custer Channel Wing Corp.*, 376 F.2d 675 (4th Cir.1967), *cert. denied*, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967). And, the Strict Liability Provision permits recovery by a purchaser if the § 5 Registration Requirement has been violated. *See Pinter v. Dahl, supra.*

■ However, the Act "carefully exempts from its application certain types of securities and securities transactions where there is no practical need for its application or where the benefits are too remote." *Securities & Exchange Commission v. Continental Tobacco Co., supra.*

■ Section 4 of the Act, 15 U.S.C. § 77d (1981), exempts transactions by an issuer not involving a "public offering" from the § 5 Registration Requirement. Nevertheless, this "exempted transaction" must be narrowly viewed since the Securities Act of 1933 is remedial legislation entitled to a broad construction. *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir.1971).

### A.

The primary issue presented on this appeal is whether the sale of these securities was a private offering and thus exempt from the § 5 Registration Requirements.

Here, the trial court correctly concluded that each limited partnership interest was a "security" as that term is described by the applicable federal securities acts. *See also Lowery v. Ford Hill Investment Co.*, 192 Colo. 125, 556 P.2d 1201 (1976).

Also, no registration statement was filed with any federal or state regulatory body in connection with the seller's offering of these securities. These facts together with two others that we must take as established—that the seller sold or offered to sell these securities, and that the seller used interstate transportation or communication with the sale or offer of sale—are sufficient to constitute a *prima facie* case for a violation of the federal securities laws. *Doran v. Petroleum Management*

*Corp.*, 545 F.2d 893 (5th Cir.1977); *Hill York Corp. v. American International Franchises, Inc., supra.*

Seller, however, asserts the affirmative defense that the relevant transactions came within the exemption from registration found in § 4 of the Act. Thus, it became the seller's burden to prove that it was entitled to the claimed exemption, *i.e.*, that there was no public offering of the securities and that registration was not otherwise required. *See Securities & Exchange Commission v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *see Garfield v. Strain*, 320 F.2d 116 (10th Cir.1963).

What constitutes a non-public offering is not set forth in the Act. However, the Securities and Exchange Commission has stated that the question of a public offering is one of fact and must depend upon the circumstances of each case. *See* 1 Fed. Sec.L.Rep. (CCH) §§ 2740 (1935), 2770 (1962); *Hill York Corp. v. American International Franchises, Inc., supra.*

■ As a result, the courts have cited four relevant factors as being helpful in determining whether an offering of securities is public or private:

1. The number of offerees and their relationship to each other and to the issuer.

2. The number of units offered.

3. The size of the offering.

4. The manner of the offering.

*Hill York Corp. v. American International Franchises, Inc., supra; Chapman v. Dunn*, 414 F.2d 153 (6th Cir.1969).

Consideration of these factors need not exhaust the inquiry, nor is the weight of one factor in favor of the private status sufficient to ensure the availability of the exemption. Rather, these factors serve as guideposts for the fact finder in attempting to determine whether subjecting the offering to registration requirements would further the purpose of the 1933 Act. *Doran v. Petroleum Management Corp.*, 545 F.2d 893 (5th Cir.1977).

The ultimate test, is whether the particular class of persons affected need the protection of the Act. *Securities & Exchange Commission v. Ralston Purina Co., supra; Anastasi v. American Petroleum Inc.,* 579 F.Supp. 273 (Colo.1984). The design of the Act is to protect investors by promoting full disclosure. However, investors who are shown to be able to "fend for themselves in a transaction not involving any public offering," may be exempt from this protection. *See Securities & Exchange Commission v. Ralston Purina Co., supra.* It therefore follows that the "exemption question turns on the knowledge of the offerees." *Securities & Exchange Commission v. Ralston Purina Co., supra.*

 Establishing the number of persons involved in an offering is important both in order to ascertain the magnitude of the offering and in order to determine the characteristics and knowledge of the persons thus identified. *Doran v. Petroleum Management Corp., supra.* The number of offerees, not the number of purchasers, is the relevant figure in considering the number of persons involved in an offering. *Hill York Corp. v. American International Franchises, Inc., supra.* The more offerees, the more likelihood that the offering is public; however, an offering to few may be public, and an offering to many may be private. *See Securities & Exchange Commission v. Ralston Purina Co., supra; see Doran v. Petroleum Management Corp., supra.* And, public advertising is incompatible with the claim of a private offering. *Hill York Corp. v. American International Franchises, Inc., supra.*

 Here, the managing partner testified that he did not know how or to whom the brokers who sold these securities solicited the investors. The managing partner was unsure of whether the securities were offered to the brokers' clients in a newsletter or to the public in general. And here, as was the case in *Repass v. Rees,* 174 F.Supp. 898 (D.Colo.1959):

"[T]here is no evidence as to how many offers were made to other persons, or the experience of those persons. The sellers did not testify that they had made no other offers. Without such evidence in the record the court cannot determine whether the class needed protection. It was incumbent on the sellers to submit this evidence."

In order to prove an exemption from the registration requirements, the evidence must be much more explicit, exact and not built on the conclusionary statements of the sellers. *See Dale v. Hahn,* 440 F.2d 633 (2nd Cir.1971). Here, we conclude that the evidence was insufficient for the trial court to direct a verdict that the seller had proven a private offering exemption. Accordingly, on retrial, the enumerated factors cited in this section must be considered by the fact finder.

### B.

Furthermore, even if the offering here were ruled to be private, it would be still subject to the rules and regulations governing unregistered securities. We therefore conclude that buyer's claims premised thereon cannot properly be disposed of by directed verdict.

Pursuant to § 19(a) of the Act, the Securities and Exchange Commission has the authority to make, amend, and rescind such rules and regulations as necessary to carry out the provisions of the Act. Pursuant to that authority, it adopted "Regulation D" which governs the limited offer and sale of unregistered securities, 17 C.F.R. 230:501 to 230:506 (1988).

The seller has claimed exemption under 17 C.F.R., § 230:504 (1988) (Regulation 504) and 17 C.F.R. § 203:506 (1988) (Regulation 506) of Regulation D. We consider each exemption separately.

### Regulation 504

 In order to qualify for an exemption under Regulation 504, (as in effect at that time), the total aggregate offering price for an offering of securities could not exceed $500,000. Here, the buyer alleged that the two offerings of the securities should have been "integrated," pursuant to 17 C.F.R. § 230:502 (1988). This theory, if proved, would defeat the claim of exemp-

tion under Regulation 504 as the total aggregate offering of the two securities exceeded $800,000. *See Hill York Corp. v. American International Franchises, Inc., supra; see also Livens v. William D. Witter Inc.,* 374 F.Supp. 1104 (D.Mass.1974).

The seller contended that it was the buyer's burden to prove that these two securities should be integrated. The trial court agreed. We conclude this was error.

The Preamble to Regulation D states: "In view of the objectives of these rules and the policies of the Act, Regulation D is not available to any issuer for any transaction or chain of transactions that, although in technical compliance with the rules, is *part of a plan or scheme to evade* the registration provisions of the Act. *In such cases, registration under the Act is required.* Preamble to Regulation D, 17 C.F.R. 230:501 to 230:506 (1988). (emphasis added)

As a result, the following factors should be considered, on remand, in determining whether these offers or sales should be "integrated" for purposes of the exemptions under Regulation D.

"(a) Whether the sales are part of a single plan of financing;

(b) Whether the sales involve issuance of the same class of securities;

(c) Whether the sales have been made at or about the same time;

(d) Whether the same type of consideration is received; and

(e) Whether the sales are made for the same general purpose." *See* Release No. 33–4552 (November 6, 1962) (27 F.R. 113161]. *See* also 17 C.F.R. § 230:502 (Note).

Here, some basis for integration appears in the facts that, for the most part, the offerings were made for the same general purpose, and the sales were made at or about the same time. While the names of the partnerships were different and the projects were located in different states, nevertheless, the managing partner was identical and the interests, rights, and obligations given to the limited partners appear to be the same.

We are unable to find authority which addresses whether a buyer must prove integration or a seller must prove the absence of integration. However, since the seller is claiming exemption under Regulation 504 and integration would defeat that exemption, we hold the seller has the burden of proving that the two offerings of securities should not be integrated. Furthermore, keeping in mind the broad remedial purposes of federal securities legislation, we conclude that placing the burden of proof on the party asserting the exemption is fair and reasonable. *See Securities & Exchange Commission v. Ralston Purina Co., supra.*

■ We further note that the seller contended that the provisions of 17 C.F.R. § 230:502(c) (1988) which prohibits general solicitation did not apply to Regulation 504. We disagree.

To qualify for an exemption under Regulation 504, the general conditions state that all offers and sales must satisfy the terms and conditions of 17 C.F.R. § 230:501 to § 230:503 (1988). One such condition, set out in 17 C.F.R. § 230:502(c)(1) (1988) provides that:

"[N]either the issuer nor any person acting on his behalf shall offer or sell the securities by any form of general solicitation or general advertising...."

However, Regulation 504 (as in effect at that time) stated that this general solicitation prohibition of Regulation did not apply to:

"offers and sales of securities ... that are made exclusively in *one or more states "each" of which provides for the registration* of the securities and requires the delivery of a disclosure document before sale ..." 17 C.F.R. 230:504 (1988). (emphasis added) (Note: amended, effective April 11, 1988).

As we have determined that Colorado did not require the registration of these securities (discussed infra), we conclude that the general solicitation prohibition applies to this transaction. Accordingly, on remand, if it is determined that there was a general solicitation or advertising of these securities, the seller will not be able to claim an

exemption under Regulation 504, regardless of whether or not the securities are integrated under 17 C.F.R. 230:502 (1988).

### Regulation 506

■ In order for a seller to claim an exemption under Regulation 506, the transaction may not be deemed to be a public offering within the meaning of § 4(2) of the Act. Thus, if it is determined that there was a public offering, the seller can not claim an exemption from the § 5 Registration Requirements.

Furthermore, even if the offer is considered private, in order to qualify for the exemption from the § 5 Registration Requirements, the issuer must prove that he:

"reasonably believed immediately prior to making any sale that *each* purchaser who is not an accredited investor either alone *or with his purchaser representative(s)* has such knowledge and experience in financial and business matters and that *he is capable of evaluating the merits and risks of the prospective investments.*" 17 C.F.R. § 230:506(2)(ii) (1988). (emphasis added)

Here, while the parties stipulated that the buyer was an accredited investor, the seller must prove that *all* purchasers were either accredited *or understood the merits and the risks involved in the offerings to claim exemption under Regulation 506.* The seller has a duty to make a reasonable inquiry into a buyer's background to qualify for the private offering exemption under Regulation 506. *See Anastasi v. American Petroleum Inc., supra.* The reasonableness of a seller's reliance turns on the adequacy of its investigation. *See Anastasi v. American Petroleum Inc., supra.*

Here, the sellers introduced into evidence the purchaser suitability forms from other buyers who invested in these limited partnerships. The forms require each purchaser to indicate whether they are an accredited investor or would be relying on a purchaser representative in evaluating the merits and risks of these investments. Two of these forms indicated that the buyers would be relying on a purchaser representative. However, the name of the purchaser representative was not furnished. By the failure of the seller to produce other evidence, we conclude that the seller failed to carry its burden of establishing a private exemption pursuant to Regulation 506 and thus, the trial court erred in directing a verdict on this issue.

### C.

■ A motion for directed verdict can only be granted if the evidence compels the conclusion that the minds of reasonable persons could not be in disagreement. *See Nettrour v. J.C. Penney Co.,* 146 Colo. 150, 360 P.2d 964 (1961). Moreover, a motion for a directed verdict admits the truth of the adversary's evidence and of every favorable inference of fact which may legitimately be drawn from it. *Pittman v. Larson Distributing Co.,* 724 P.2d 1379 (Colo. App.1986). Accordingly, we conclude the trial court erred in directing the verdicts for the seller and against buyer on his claims for violations of federal securities laws.

### II.

■ Buyer next contends that the trial court erred in directing verdicts against buyer on his third-party claims against the accountant. We agree.

In December of 1983, buyer was contacted by the accountant concerning investing in the two limited partnerships. At that time, the buyer did not have the subscription documents to review but tendered two checks as his initial down payment in order to take the tax benefits for 1983. Buyer contended that the accountant told him that if he was dissatisfied with either partnership after reviewing the subscription documents, he could either sell the partnerships or have his money returned to him. These alleged representations were in direct conflict with the rights of the limited partners as set forth in the subscription documents.

When the buyer reviewed the documents, he decided that he was not interested in becoming a limited partner and sought to rescind the transaction. However, the sell-

er refused to return the down payment. As a result, buyer, in his third-party claim, alleged that the accountant had falsely and fraudulently represented the terms of the subscription documents to him.

At the close of all the evidence, the accountant requested a directed verdict on the third-party claims. The accountant contended that no damages had been established as the buyer had received more in tax benefits than his initial investments in the partnerships. The accountant contended that no damages had been proved, an essential element of fraud had not been established. The trial court agreed and directed a verdict on all claims asserted by buyer against the accountant and all counterclaims asserted by buyer against the seller. This we conclude was error.

The Supreme Court, in *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986), held that tax benefits are to be excluded for purposes of calculating damages, at least as they relate to § 12(2) of the Act.

Any economic benefit the buyer received by way of tax deductions is illusory because if the buyer here recovers on his third-party claims and counterclaims, amended returns will have to be filed under the tax benefit rule. *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir.1984). Furthermore, whether the plaintiff has received a tax benefit is a matter that concerns only the buyer and the government. *See Cereal ByProducts Company v. Hall*, 16 Ill.App.2d 79, 147 N.E.2d 383 (1958), aff'd 15 Ill.2d 313, 155 N.E.2d 14 (1958). Hence, we conclude that the trial court erred in determining that tax benefits offset damages.

### III.

■ Buyer next asserts that the trial court erred in directing a verdict to the effect that the seller did not violate the registration requirements under the Colorado Securities Act, § 11–51–101, et seq., C.R.S. (1987 Repl.Vol. 4B). We disagree.

The Colorado Securities Act specifically prohibits the sale of securities within this state, unless registered under § 11–51–107, C.R.S. (1987 Repl.Vol. 4B) or unless the transaction is exempted under § 11–51–113, C.R.S. (1987 Repl.Vol. 4B). The issue of exemption is crucial since the availability of exemption from registration is an affirmative defense to the charge of sale of an unregistered security. *People v. Morrow*, 682 P.2d 1201 (Colo.App.1983).

The exemption at issue here is found in § 11–51–113(2)(*o* ), C.R.S. (1987 Repl.Vol 4B). That statutory provision exempts from the registration requirement of the state act:

"Any offer or sale of a security not constituting an intrastate offering."

The parties do not dispute that the offer and sale of these securities were interstate in nature. Accordingly, the trial court was correct in directing a verdict that the seller was exempt from the registration requirements under the Colorado Securities Act, § 11–51–107(1).

### IV.

Buyer next contends that the trial court erred in directing verdicts to the effect that the seller had not violated §§ 11–51–123 and 11–51–125, C.R.S. (1987 Repl.Vol. 3B). We agree.

The buyer, in his counterclaim, alleged that the accountant was an agent of the seller. The buyer alleged that the accountant and the seller misrepresented and sold these securities with an intent to defraud the buyer in violation of § 11–51–123. Section 11–51–123 states that it is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:

"(a) To employ any device, scheme or artifice to defraud;

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make statements made, in the light of the circumstances under which they are made, not misleading; or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

As a result of these claims, the buyer sought relief pursuant to § 11–51–125, which sets forth the civil liabilities for violations of the Colorado Securities Act.

When the trial court dismissed the accountant, the seller contended that, as the securities were not sold in violation of § 11–51–107 and since the agent had not done anything wrong, no liability could attach to the principal (seller). The trial court agreed. We conclude this was error.

As we have determined that the trial court incorrectly directed a verdict in favor of the accountant, the claims for violations of §§ 11–51–123 and 11–51–125 must be reinstated. Furthermore, the violations and remedies under §§ 11–51–123 and 11–51–125 can exist against the seller independent of whether an agent was involved in the offering or sale of the securities.

 Moreover, a claim for misrepresentation under the Colorado Securities Act does not depend upon the exempt or non-exempt status of the security, *Lowery v. Ford Hill Investment Co., supra.* The misrepresentation may occur in the context of the registration statement for a non-exempt security, or in the promotion or negotiations for sale of an exempt or non-exempt security. *Lowery v. Ford Hill Investment Co., supra.*

As § 11–51–125 is analogous to § 12 of the Act, *Kerby v. Commodity Resources Inc.*, 395 F.Supp. 786 (D.Colo.1975), we also determine, for the reasons set forth above, that the trial court erred in directing a verdict against the buyer on his claim for violations under § 12(2) of the Act. Accordingly, we conclude that the trial court erred in directing verdicts on buyer's claims under § 11–51–123 and § 11–51–125, C.R.S. (1987 Repl.Vol. 3B) and § 12(2) of the Act.

Accordingly, the trial court's directed verdicts entered in favor of the seller and against the buyer for violations of federal security laws are reversed and remanded. The trial court's directed verdict that seller did not violate the Colorado security registration requirements of § 11–51–107 is affirmed. The directed verdicts entered against the buyer for claims against the seller and accountant pursuant to §§ 11–51–123 and 11–51–125, C.R.S. (1987 Repl. Vol. 3B) are reversed and remanded.

Judgment affirmed in part, reversed in part and the cause is remanded for a new trial consistent with the views herein expressed.

JONES and NEY, JJ., concur.