Margaret H. MUNSON, individually, and as co-trustee for the William R. Munson Trust; W.A. Munson, as co-trustee, and as attorney-in-fact for Marion Gotschall, co-trustee of the William R. Munson Trust, Plaintiffs–Appellants,

v.

BOETTCHER & COMPANY, INC. and Craig L. Carson, Defendants–Appellees.

No. 89CA1627.

Colorado Court of Appeals, Div. IV.

Nov. 7, 1991.

Rehearing Denied Dec. 19, 1991.

Certiorari Granted June 29, 1992.

Gersh & Danielson, Miles M. Gersh, Laurie K. Rottersman, Denver, for plaintiffs-appellants.

Brega & Winters, P.C., Charles F. Brega, W. Keith Tipton, Denver, for defendants-appellees.

Opinion by Judge METZGER.

Plaintiffs, Margaret H. Munson and the William R. Munson Trust, appeal the award of damages based on a jury verdict finding defendants, Boettcher & Company, Inc., and Craig L. Carson, liable for breach of fiduciary duty. Plaintiffs also appeal the judgment based on the jury verdict finding the defendants not liable for violation of the Colorado Securities Act or for fraud. We reverse and remand for a new trial.

In 1979, after her husband died and the family farm was sold, Margaret Munson opened an individual investment account and later a trust account at Boettcher & Company, Inc., with Craig L. Carson as her broker. At trial, Munson testified that she had had no experience in investing, that she trusted defendants to make the right investments, and that her objectives were "not [to] pay it all out to taxes and it should grow and be safe."

Over a period of eight years, Carson recommended and plaintiffs uniformly agreed to invest most of plaintiffs' money in real estate and oil and gas limited partnerships. While these investments gave tax reductions, they were also very risky. However, these limited partnerships paid Carson twice the regular commission he received on other investment options, and, in two of the limited partnerships, Boettcher & Company was the general partner.

In 1987, when the value of the limited partnerships had diminished significantly, plaintiffs filed a complaint against the defendants alleging breach of fiduciary duty, fraud, violation of the Colorado Securities Act, and negligence. At trial plaintiffs sought to introduce the testimony of three witnesses who had placed their investment portfolios with Carson. Like plaintiffs, all of them were induced to invest in limited partnerships contrary to their investment objectives. The trial court denied the admission of this evidence, finding that the prejudice to the defendants outweighed the probative value.

Defendants presented evidence to support their argument that, because of the limited partnership investments and the amount of taxable gain plaintiffs would have paid if they had invested according to their objectives, the tax reductions received by plaintiffs should be deducted from the award of damages. Plaintiffs disagreed and tendered the following instruction.

In determining the amount of any damage award to plaintiffs, taxation should not be a factor in your determination; therefore, you are not to include or subtract any amount because of taxes paid or to be paid.

The trial court refused this instruction, stating that the case could not be determined without arguing the impact of taxes since the avoidance of taxes was one of the plaintiffs' goals.

## I.

As to the breach of fiduciary duty claim, plaintiffs contend the trial court erred in refusing to instruct the jury that it should not consider any tax consequences in determining damages. We agree.

■ The determination of the proper measure of damages is a complicated, and often confusing, process. The general underlying principle, however, is that whoever unlawfully injures another shall make him or her whole. *Cope v. Vermeer Sales & Service of Colorado, Inc.*, 650 P.2d 1307 (Colo.App.1982). Damages based upon mere speculation and conjecture are not allowable. *Peterson v. Colorado Potato Flake & Mfg. Co.*, 164 Colo. 304, 435 P.2d 237 (1967).

## A.

First, plaintiffs argue that tax benefits received as a result of the limited partnership investments should not have been considered as an offset to the award of damages.

This issue has not been addressed in Colorado in the context of breach of fiduciary duty. The U.S. Supreme Court, in *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986), held that tax benefits are to be excluded for purposes of calculating damages, at least as they relate to § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) (1982). And, this court, in *Western–Realco Limited Partnership 1983–A v. Harrison*, 791 P.2d 1139 (Colo.App.1989), held that tax benefits should not offset damages in a fraud claim.

■ The reasoning and analysis of those cases are persuasive here. Although tax benefits are proper considerations in determining liability issues, they are improper factors in a damages assessment. Any economic benefit a plaintiff may receive by way of tax deductions is illusory in a damages calculation. If the plaintiff recovers on her claims, amended tax returns would have to be filed under the tax benefit rule. J. Mertens, *Law of Federal Income Taxation*, § 7.81 (1988).

Also, whether a plaintiff has received a tax benefit is a matter that concerns only the plaintiff and the government. *Western–Realco Limited Partnership 1983–A v. Harrison, supra.*

Further, the effect of allowing a tax benefit offset would often be to insulate those who commit securities fraud from any appreciable liability to defrauded investors. *Randall v. Loftsgaarden, supra.* Hence, the result would leave the government bearing the cost of defendants' fraud. *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir.1984).

■ In this case, allowing the jury to deduct the tax benefits received by the plaintiffs against any damage award inured unfairly to the benefit of the defendants. Defendants' liability was reduced by any tax benefits plaintiffs received. This could result in the offset for tax benefits exceeding the damage award. *See Western–Realco Limited Partnership 1983–A v. Harrison, supra.* Therefore, defendants, in effect, were insulated from the consequences of their wrongful acts.

Moreover, plaintiffs would be required to file amended tax returns and any tax benefit received could possibly be lost. *Burgess v. Premier Corp., supra.*

Defendants argue that plaintiffs' reliance on a line of cases in which the remedy sought was rescission is inapposite because here plaintiffs sought only damages. However, in *Randall v. Loftsgaarden, supra*, the court stated that when the plaintiff no longer owns the security, damages are to be measured so as to result in the substantial equivalent of rescission. And, in *Western–Realco Limited Partnership*

*1983–A v. Harrison, supra,* the remedy was damages. Accordingly, the trial court erred in refusing to instruct the jury to disregard the tax benefits received by the plaintiffs in determining the award of damages.

### B.

Plaintiffs also maintain that, in calculating the damage award based on a hypothetical investment portfolio, the award of damages should not be reduced by the taxes which might have been owed on gains from investments in that portfolio. We agree.

■ Generally, amounts received as damages in litigation are ordinary income for income tax purposes. *See* 26 U.S.C. § 61 (1982); *Jones v. Corbyn,* 186 F.2d 450 (10th Cir.1950).

We are not aware of any authority which authorizes reduction of a damage award in anticipation of additional taxation.

It is the province of the Internal Revenue Service and local taxing authorities to deduct taxes from the recovery by a plaintiff of what presumably would have been ordinary income to it but for the defendant's activities. If defendant … were to prevail upon this point, plaintiff … would essentially incur a double deduction [for] taxes—once by the court in the process of calculating the damages to be awarded, and once by the taxing authorities upon the recovery of the lost income. Additionally, the proper amount of tax liability will ultimately depend on many factors not before the trial court.… It is not the function of the court or the parties to become collectors of taxes.

*Orchard Container Corp. v. Orchard,* 601 S.W.2d 299 (Mo.App.1980).

■ Here, taxes which would have been owed on a hypothetical portfolio should not be deducted from the award of damages. If the jury deducted taxes on the damage award and the IRS deducted taxes on the damage award, plaintiffs would incur a double deduction from taxes and the defendants would benefit unfairly by receiving a reduction in the amount they would have to pay. *See Jones v. Corbyn, supra; Orchard Container Corp. v. Orchard, supra.*

Further, the record is devoid of any applicable tax laws, IRS provisions, or tax regulations which would assist the jury in determining whether plaintiffs had any tax liability. Since plaintiffs' tax liability is uncertain, the jury's verdict could have been based only on speculation.

While we agree that the tax benefits of plaintiffs' investment portfolios were relevant to the issue of liability (already determined in plaintiffs' favor), they are not relevant to damages. Consequently, the trial court erred in allowing defendants to argue that these taxes should be offset against any damage award and the jury should have been instructed accordingly.

### II.

As to the claims alleging fraud and violation of the Colorado Securities Act, § 11–51–101, et seq., C.R.S. (1987 Repl.Vol. 4B), plaintiffs contend that the trial court erred in refusing to allow evidence of similar transactions under CRE 404(b). We agree.

■ While CRE 404(b) is more frequently applied in criminal prosecutions, it also applies in civil cases if the proffered evidence is relevant to the issues. *College v. Scanlan,* 695 P.2d 314 (Colo.App.1985). There is a four-part analysis to determine whether evidence of similar transactions is admissible: 1) whether the proffered evidence relates to a material fact; 2) whether the evidence is logically relevant; 3) whether the logical relevance is independent of the intermediate inference that the defendants have bad character; and 4) whether the probative value is substantially outweighed by danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

■ A material fact is a fact that "is of consequence to the determination of the action." CRE 401. A fact is relevant if it makes the existence of the material fact more probable or less probable than it would be without the evidence. CRE 401; *People v. Carlson,* 712 P.2d 1018 (Colo. 1986). The trial court may exclude relevant evidence only "if its probative value is

*substantially* outweighed by the danger of unfair prejudice." *People v. Lowe*, 660 P.2d 1261 (Colo.1983) (emphasis in original).

Plaintiffs' offer of proof was that three witnesses would testify that, during the same period at issue here: 1) Carson was their broker; 2) their objectives were similar to those of the plaintiffs; 3) Carson had them invest in the same limited partnerships as the plaintiffs; and 4) the value of their portfolios was greatly diminished by these investments.

This evidence relates to a material fact: whether the defendants engaged in a pattern or practice and a plan, scheme, or design in regard to the alleged fraud and violation of the Colorado Securities Act. *See* §§ 11–51–123 and 11–51–125(2), C.R.S. (1987 Repl.Vol. 4B). It also makes the fact more probable than not, and the evidence is independent of any intermediate inference.

The trial court found that, because the sample consisted of only three of Carson's 200 clients, the evidence was more prejudicial than probative. However, requiring plaintiffs to call every client of Carson's to establish a plan, scheme, or design would place an unreasonable burden on the plaintiffs. As well, the record does not indicate that all of Carson's clients fall within the same category of investor as the plaintiffs; consequently, not all 200 were necessary. Moreover, contradictory evidence was readily available to defendants, since they enjoyed access to investment information concerning all of Carson's clients.

Hence, we conclude that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice; thus, the trial court erred in not allowing the plaintiffs to present the similar transaction evidence.

The award of damages for breach of fiduciary duty is reversed, the judgments in favor of the defendants on plaintiffs' claims for fraud and violation of the Colorado Securities Act are reversed, and the cause is remanded for a new trial on damages for the breach of fiduciary duty claim and on both liability and damages for the fraud and violation of the Colorado Securities Act claims.

PIERCE and ROTHENBERG, JJ., concur.